In re W.S. DICKEY CLAY MANUFACTURING COMPANY—LOCAL 4359 UNITED STEELWORKERS OF AMERICA PENSION PLAN.

PENSION BENEFIT GUARANTY CORPORATION, Applicant-Appellee,

v.

W.S. DICKEY CLAY MANUFACTURING COMPANY, INC., Respondent-Appellant.

No. 81–2366.

United States Court of Appeals, Tenth Circuit.

Oct. 31, 1983.

---

Michael F. Delaney of Spencer, Fane, Britt & Browne, Kansas City, Mo. (Jack L. Whitacre and Robert B. Terry of Spencer, Fane, Britt & Browne, Kansas City, Mo., and J.D. Lysaught of Weeks, Thomas, Lysaught, Bingham & Mustain, Overland Park, Kan., with him on brief), for respondent-appellant.

Stephen D. Schreiber, Trial Attorney, Pension Benefit Guar. Corp., Washington, D.C. (Henry Rose, General Counsel, James N. Dulcan, Asst. General Counsel, Washington, D.C., with him on brief), for applicant-appellee.

Before SETH, Chief Judge, and BREITENSTEIN and HOLLOWAY, Circuit Judges.

SETH, Chief Judge.

In 1969, W.S. Dickey Clay Manufacturing Company, Inc. entered into a collective bargaining agreement with the United Steelworkers of America which established a pension plan agreement. The pension plan was funded by contributions made by Dickey Clay in proportion to the number of hours actually worked by the plan's participants. Benefits were determined by multiplying a participant's years of continuous service by a given dollar amount called a benefit multiplier. The pension plan gave the insurance company which administered the plan's funds the power to revise the benefit multiplier upon approval by the Steelworkers.

On July 15, 1975, the collective bargaining agreement expired and the Steelworkers struck Dickey Clay. Since Dickey Clay's contributions to the plan were based on the number of hours worked by plan participants, Dickey Clay made no further contributions to the plan after the strike began.

By December 1975, the plan had insufficient assets to pay benefits to the newly retired employees that were eligible to receive pensions. Four months later, Dickey Clay notified the Pension Benefit Guaranty Corporation (PBGC) pursuant to 29 U.S.C. § 1341(a) of its intent to terminate the plan. The PBGC determined that the plan's benefits were insured under Title IV of ERISA and applied for an order permitting termination of the plan and appointing itself as the statutory trustee. If the plan is insured under Title IV, the PBGC can recover from Dickey Clay the amount it pays to the plan's participants. 29 U.S.C. § 1362(b). The trial court here granted the PBGC's application.

Section 1322(a) provides that, subject to certain statutory limitations, the PBGC "shall guarantee the payment of all nonforfeitable benefits ... under [an applicable] plan ...." 29 U.S.C. § 1322(a). In this

appeal, Dickey Clay contends that the plan benefits were conditional and indeterminable, and were therefore not "nonforfeitable benefits" under § 1322(a).

In *Nachman Corp. v. Pension Benefit Guaranty Corp.,* 446 U.S. 359, 100 S.Ct. 1723, 64 L.Ed.2d 354, the Supreme Court addressed the issue of nonforfeitable benefits under Title IV. In *Nachman,* the pension plan provided that vested benefits would be limited to amounts that could be provided by the assets of the fund. The Court held that vested benefits are nonforfeitable for purposes of 29 U.S.C. § 1322. A benefit becomes vested when "the benefit would survive a termination of [the employee's] employment . . . ." *Id.* at 364, 100 S.Ct. at 1727.

The company in *Nachman* argued that even though certain benefits had vested "in a contractual sense," the benefits were forfeitable if fund assets were insufficient. The Court rejected the company's argument finding that the term "nonforfeitable" reflects "the quality of the participant's right to a pension rather than a limit on the amount he may collect." *Id.* at 373, 100 S.Ct. at 1732. The Court then held that merely because an employer disclaimed liability for deficiencies in the pension fund did not enable the employer to exclude otherwise vested benefits from the PBGC's insurance program. *Id.* at 378, 100 S.Ct. at 1734. The benefits in *Nachman* were therefore declared to be "nonforfeitable" and guaranteed by the PBGC.

Dickey Clay's plan provides that the monthly benefit amount is determined by multiplying the benefit multiplier by the years of the participant's service. That amount is subject to a clause limiting benefit payments to the assets in the pension fund. The assets in the fund, as mentioned, were contingent upon Dickey Clay's contributions.

Dickey Clay argues that the payment of *any* benefits was conditioned by section 11 of the plan upon the sufficiency of the company's contribution. *Nachman* differs, it asserts, because the plan there involved a situation in which the employer promised to pay certain defined benefits without any limitation. By so arguing, Dickey Clay has deviated from the primary holding of *Nachman:* if benefits have vested, as defined above, then they are nonforfeitable regardless of the sufficiency of the assets of the fund. The benefits remain vested even if the fund is insufficient to meet all of the claims. Acceptance of Dickey Clay's formulation would deny the participants any resort to the insurance provisions of Title IV whatever the reason for the shortcoming. *See, Nachman, supra,* 446 U.S. at 372 n. 17, 100 S.Ct. at 1731 n. 17. The limitation of the *amount* of benefits pursuant to sections 4.2 and 11 of the plan simply does not affect the company's obligation to pay vested benefits pursuant to section 4.1. (Any employee, subject to certain service and age requirements, "may retire . . . and shall be entitled to receive a normal pension.") *Accord, A–T–O, Inc. v. Pension Benefit Guaranty Corp.,* 634 F.2d 1013, 1019 (6th Cir.1980). (In interpreting an identical clause, the Sixth Circuit held that "[t]here is no meaningful distinction between the . . . pension plan [at issue] and the Nachman pension plan.")

Neither do we believe that merely because the benefit multiplier is adjustable that the benefits are forfeitable. The multiplier was always determinable by reference to the plan. As we have previously stated, the fact that the amount of pension payments may be altered does not affect the company's obligation to pay. *Accord, Concord Control, Inc. v. International Union,* 647 F.2d 701 (6th Cir.1981).

We therefore affirm the trial court's termination of the plan effective April 1, 1976 and its appointment of the PBGC as statutory trustee.

It is the judgment of this court that the judgment of the trial court is AFFIRMED.